IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| C.D.J., *a minor child, by and through his friend, mother, and next of kin,* *Chrissy Kozlowski*, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CASE NO. 2:23-cv-00706-RAH [WO] |
| MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*, ) ) ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER
## I. INTRODUCTION

Minor Plaintiff CDJ, a disabled middle-school student, was bullied at school and bludgeoned in the head with a backpack by another student on the school bus. Blood flowing from his wound, the bus driver ignored CDJ and left him to fend for himself. CDJ sues the Montgomery County Board of Education and several administrators and school employees under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and the Fourteenth Amendment to the United States Constitution for their inaction and failure to prevent the bodily injury he suffered from peer-on-peer bullying. He brings three other state law claims and seeks monetary damages. Defendants have moved to dismiss all claims. CDJ resists. The Second Amended Complaint will be dismissed.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, a court considers only the allegations contained in the complaint and any attached exhibits. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* (alteration adopted) (citing Fed. R. Civ. P. 8(a)(2)).

## IV. BACKGROUND

On April 14, 2023, Plaintiff CDJ, a minor diagnosed with non-verbal autism and other learning disabilities who is subject to an Individualized Education Program, headed toward the bus after school at Goodwyn Middle School in Montgomery, Alabama. Earlier that day, and throughout much of his time in school, other students bullied CDJ, subjecting him "to beratement, physical touching, and verbal abuse[.]" (Doc. 60 at 8.) After he spotted an aggressive student who had "verbally assaulted and threatened" him walk toward the same bus he was about to board for the journey home, CDJ told Defendant Douglas Terrell—the assistant principal at Goodwyn—that "he was fearful of the student" and worried for his safety on the bus. (*Id.*) Terrell told CDJ to get on the bus anyway.

Aboard the bus, the aggressive student continued to "harass" CDJ. (*Id.* at 9.) The student "began to physically assault" CDJ by "punching, grabbing, and shoving" him. (*Id.*) The other children on board saw what was happening and loudly "began to narrate the aggressor's acts[.]" (*Id.*) According to the Second Amended Complaint (SAC), Defendant Frank Brooks—the bus driver—was within earshot of the events and had a line of sight to the children the entire time, but he did nothing. (*Id.*) At the peak of the assault, the aggressive student "bash[ed]" "a loaded bookbag . . . against [CDJ's] skull before fleeing" from the bus. (*Id.* at 10.) The impact caused CDJ "excruciating pain, extensive bleeding," and led him to "fade in and out" of consciousness. (*Id.*) CDJ "screamed as loud as he could, 'Help me[!] Help me, please!'" (*Id.*) Blood flowed "from his skull[] down onto his shirt" and began to puddle in his hands, eventually reaching the bus floor. (*Id.*) CDJ stumbled to the front seat of the bus, hoping Brooks would render some sort of aid. Brooks did nothing. He "continued driving his route, letting children off at their stops, and effectively ignor[ed]" CDJ. (*Id.*) When the bus reached CDJ's home (his mother's apartment) Brooks "simply unload[ed]" CDJ, "even after he audibly told [Brooks]

3

he [was] 'about to pass out[.]'" (*Id.* at 11.)  Brooks left CDJ to "aimlessly wander from the bus stop to his apartment." (*Id.* at 11–12.)  His mother was home, and she rushed CDJ to the emergency room for care.

On December 7, 2023, Chrissy Kozlowski, CDJ's mother, filed suit on CDJ's behalf, seeking monetary damages.  (Doc. 1.)  CDJ alleges the incident on the bus, together with the history of bullying and abuse he experienced at school, harmed him and deprived him of the "ability to partake in the full educational benefits of his public schooling[.]"  (Doc. 60 at 12.)  Along with Terrell and Brooks, CDJ sues the Montgomery County Board of Education (MCBOE), Montgomery Public School Superintendent Melvin J. Brown, Goodwyn Principal Keisha Howard, Montgomery Public Schools Transportation Director Brian Thornton, and Montgomery Public Schools Bus Safety Investigator Linda VanDiver.

CDJ brings six claims: violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132–34, against the MCBOE (Count II); violations of the Fourteenth Amendment against all Defendants (Count III); violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, 1411–19, against the MCBOE, Terrell, and Brooks (Count IV); state-law claims for recklessness/wantonness (Count I) and for the Tort of Outrage (Count V) against all Defendants; and, a state-law claim for negligence against Brown, Howard, Terrell, Brooks, Thornton, and VanDiver (Count VI).

## V. DISCUSSION

Defendants seek dismissal of the SAC.  The federal claims will be resolved first, then the state-law claims.

### A. The IDEA Claim

The IDEA was enacted "to promote the education of children with disabilities." *Dubrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176,

4

179 (1982)). It "offers the States federal funds in exchange for a commitment to provide all 'children with disabilities' individually tailored special education, also known as 'free appropriate public education' or 'FAPE.'" *Id.* (quoting 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A)). To achieve IDEA's goal, a child's "parents, teachers, and school officials" usually develop an individualized education program (IEP) that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017)).

CDJ seeks only monetary damages against the MCBOE, Terrell, and Brooks under the IDEA because of the incident on the school bus and other generalized school-bullying allegations. CDJ says the acts of his peers together with the Defendants' inaction "create[ed] a hostile environment and depriv[ed] him of educational opportunities, further preventing him from progress through his IEP." (Doc. 60 at 21.)

For starters, "the only remedy available under the IDEA is injunctive relief for the wrongful denial of a FAPE[.]" *Id.* at 1190 (citing *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165–67 (2017)); *Powell v. Sch. Bd. of Volusia Cnty., Fla.*, 86 F.4th 881, 884 (11th Cir. 2023) (per curiam) ("[Plaintiffs] seek compensatory and punitive damages. The IDEA provides neither."). Defendants do not argue Count IV fails because its gravamen is something other than the denial of a FAPE, or that CDJ seeks a remedy the IDEA does not provide. Even though one or both issues may resolve this claim, the Court is tasked with considering the parties' arguments. So, on then to the Defendants' positions.

The MCBOE argues that Count IV must be dismissed because CDJ failed to exhaust administrative remedies before filing this suit; the administrative process constituting a necessary jurisdictional threshold here because, in MCBOE's view, CDJ alleged he "was deprived of educational opportunities preventing him from

5

progress through his IEP" and that "demonstrates a disagreement with the provision of a" FAPE. (Doc. 73 at 11.) Terrell and Brooks argue the claim should be dismissed against them because IDEA does not allow individual liability.

"In order to properly exhaust a claim that seeks relief for the denial of a free appropriate public education, the claim must proceed through an administrative hearing and receive a final decision from an administrative judge before review may be sought from a federal district court." *Dubrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1191 (11th Cir. 2018) (citing 20 U.S.C. § 1415(i)(2)(A), (g)(2)). The SAC says nothing of a completed administrative proceeding or a final decision from an administrative judge. CDJ admits that "the technical parameters in submitting a written request to the State Superintendent of Education was not fully complied with[.]" (Doc. 75 at 22.) Unencumbered by the facts, he makes what is essentially an interests of justice argument: He contends that because his mother "was unaware" of the remedial administrative process he should not be barred "from recovering for injuries incurred." (*Id.* at 22–23.) The IDEA says what is says, and the Eleventh Circuit means what it writes. By his own admission, CDJ did not exhaust his administrative remedies and, technicality or not, the Court lacks jurisdiction over this claim. *See J.P. v. Cherokee Cnty. Bd. of Educ.*, 218 F. App'x 911, 914 (11th Cir. 2007) (per curiam). Count IV will be dismissed against all three Defendants for CDJ's failure to exhaust administrative remedies.

### B. The ADA Claim

CDJ named only the MCBOE in Count II, and the MCBOE contends CDJ has failed to state an ADA claim.

Before diving in, note that CDJ's failure to exhaust administrative remedies before bringing his IDEA claim does not bar his ADA claim. *Powell*, 86 F.4th at 884–85 (citing *Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023)).

6

Turning to the merits, Title II of the ADA "forbid[s] discrimination on the basis of disability in the provision of public services." *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Normally, to state a claim under Title II, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [his] disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256–57 (11th Cir. 2022) (citation omitted).

On the first element, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The ADA's implementing regulations instruct that "disability" "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i). Intellectual disabilities are included in the ADA's definition of "disability" and major life activities include "walking . . ., interacting with others, and working[.]" *Id.* § 35.108(b)(2), (c)(1)(i). The term "substantially limits" is construed "broadly" and "is not meant to be a demanding standard." *Id.* § 35.108(d)(1)(i). Pause; here lies the first problem with Count II. The MCBOE argues that although CDJ alleged he has an intellectual disability, he has not established that it limits a major life activity. That is correct. CDJ says he has was diagnosed with "non-verbal autism along with other learning disabilities[,]" but he says nothing about which major life activity, if any, his disability substantially limits.

7

That alone may be enough to foreclose Count II because the Court cannot conjure the necessary allegations from the ether, even if they seem obvious. But even assuming, without deciding, the allegation of CDJ's disability is sufficient, Count II has more problems.

This case arises from peer-on-peer conduct in the school context. Faced with the same posture, and without Eleventh Circuit guidance precisely on point, another judge of this Court applied the Sixth Circuit's standard to test the plausibility of a peer-on-peer school harassment claim under Title II. *Moore v. Chilton Cnty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1314 (M.D. Ala. 2013) (Watkins, J.) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d. 445, 454 (6th Cir. 2008) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999))). Many other courts have followed suit, applying the *Davis* framework to claims involving a school's failure to remedy disability-based peer-on-peer harassment. *E. Ky. Univ.*, 532 F.3d at 453 (collecting cases); *M.J. v. Marion Ind. Sch. Dist.*, No. SA-10-CV-00978-DAE, 2013 WL 1882330, at *6 (W.D. Tex. May 3, 2013) (same). Although the Sixth Circuit's test is not binding, it is both useful and accords with the spirit of the law, so the Court will apply it here. To state a Title II claim against the MCBOE based on peer-on-peer conduct, CDJ must allege that (1) he has a disability, (2) he was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive education environment, (4) the MCBOE knew about the harassment, and (5) the MCBOE was deliberately indifferent to the harassment. *Moore*, 936 F. Supp. 2d at 1314 (citations omitted). To show the MCBOE acted with deliberate indifference, CDJ must allege "the deliberate indifference of an *official* who at a minimum has *authority* to address the alleged [wrongdoing] and to institute corrective measures on the entity's behalf and who has *actual knowledge* of [wrongdoing] in the entity's programs and fails

8

adequately to respond." *Ingram*, 30 F.4th at 1259 (alterations adopted & emphasis in original) (citation omitted).

CDJ alleges that "Terrell and Brooks had actual notice of [his] disability-based harassment" and "Brown, Thornton, VanDiver, and Howard were further placed with actual notice their actions would, or would be very likely[] to[,] affect" CDJ because they "fail[ed] to uphold policies and regulations for the safety and protection of rights of students[.]" (Doc. 60 at 16.) The SAC adds, "the inaction and deliberate indifference by Defendants Brown, Thornton, VanDiver, Terrell, Brooks, and Howard, individually and as agents of Defendant MCBOE" caused CDJ "physical injury, mental anguish, and emotional distress . . . and infringed upon [his] rights[.]" (*Id.* at 17.) So, CDJ alleges that he "is entitled to an award of compensatory damages, attorneys' fees, costs, and interest against Defendant MCBOE." (*Id.*) The MCBOE, for its part, contends CDJ has not alleged it engaged in any violative conduct under the ADA.

The SAC lacks the heft one might expect to support a plausible Title II claim. Under the Sixth Circuit's standard, CDJ alleged he has at least one learning disability, but he did not allege the aggressive student harassed him because of his disability instead of some other reason (however misguided). He did not allege how any purported disability-based harassment altered the condition of his education, even though his injuries support an inference that the harassment created an abusive educational environment (assuming riding a bus from school where no education is taking place is part of the education environment). Even spotting him that the MCBOE knew about the harassment, he did not sufficiently allege the MCBOE was deliberately indifferent to the harassment.

Moreover, returning to the usual Title II standard, *see Ingram*, 30 F.4th at 1256–57, CDJ did not sufficiently allege that the incident he experienced on the school bus—or the vague references to bullying he experienced at school—amounts

9

to discrimination, or the exclusion from or denial of the benefits of his education because of his disability. In other words, CDJ failed to develop the basis of his disability, how it impacts a major life activity, how he was denied the benefits of his education, that he was harassed because of his disability, and that the MCBOE itself (through an appropriate official) was deliberately indifferent to any such disability-based harassment.

At bottom, what CDJ advances are allegations of peer-on-peer school bullying that escalated to bodily injury during a bus ride, and he says Defendants did not stop it. Brooks had actual notice of the alleged harassment; he let it happen anyway. He must come to grips with that later. CDJ's injuries are traceable to the shameful acts of his peers and the alleged inaction of Defendants, and he may well have strong common law tort claims. But CDJ leaves too much to inference in Count II, seeking relief under the ADA, so his claim is merely vague and speculative. It will be dismissed.[1]

### C. The Fourteenth Amendment Claim

CDJ styles Count III as both a Fourteenth Amendment due process and equal protection claim brought under 42 U.S.C. § 1983. But his allegations tell a different story. CDJ alleges Defendants "act[ed] arbitrarily, in a conscience-shocking way" and "fail[ed] to protect him from harassment, intimidation, and assault by students at Goodwyn Middle School by way of failing to uphold and/or follow policies and regulation of MCBOE and the State of Alabama[.]" (Doc. 60 at 18.) His allegations track only the substantive due process standard, not any other. *See Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) ("Conduct by a government actor will rise to the

---

[1] It is not lost on the Court that Judge Watkins went the other way on Moore's ADA claim, denying the school board's motion to dismiss. 936 F. Supp. 2d at 1315. But the Court takes cases as it finds them and, for reasons already discussed, CDJ's ADA claim does not pass muster under Rule 8 and *Iqbal/Twombly*.

level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense.").

To begin, the individual Defendants contend CDJ's allegations are not conscious-shocking in a constitutional sense, and the MCBOE argues CDJ failed to show it is liable for his injury. They are right. There is no need to look further than Judge Watkins' thoughtful analysis in *Moore*. There, Plaintiff A.M. endured savage acts of peer-on-peer bullying at school because of her medical conditions. 936 F. Supp. 2d at 1304. The school administrators and teachers did not stop the cruelty, and A.M. eventually took her own life. *Id.* Weighing a substantive due process claim, like the one here, and embarking on a comparative analysis of Supreme Court and Eleventh Circuit precedent, Judge Watkins dismissed the claim. *Id.* at 1308–1313. He concluded that the school board's (including the administrators and teachers) failure to intervene or stop the peer-on-peer violence was not conscience-shocking conduct under the Fourteenth Amendment, and "[n]o matter how tragic these events, the [school board] did not owe a duty" to protect A.M. "from third-party bullying[.]" *Id.* at 1312. So too here.

The acts of the aggressor on the school bus, those of other peers who bullied CDJ, and the Defendants' utter failure to prevent physical harm to CDJ because of the bullying—all reprehensible if true—simply do not amount to conscience-shocking conduct on the part of Defendants in a constitutional sense, and, in any event, the MCBOE owed no duty under substantive due process to protect CDJ from peer-based bullying. *Id.* at 1312 (quoting *DeShaney v. Winnebago Cnty., Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989)).

CDJ relies on *Doe v. Huntsville Schools Board of Education*, 546 F. Supp. 3d 1043 (N.D. Ala. 2021), to distinguish *Moore*. In *Doe*, the court did not dismiss a substantive due process claim against a school board and individual defendants (who were on notice of physical harm to the plaintiff) after they failed to stop students

11

from permanently injuring John Doe—an eight-year-old, disabled plaintiff subjected to severe bullying at school. 546 F. Supp. 3d at 1046–47, 1051. For the better part of a school year, John Doe's peers bullied and physically assaulted him—at some point with the defendants' knowledge—in the bathroom, during physical education class, and on the playground. *Id.* at 1046. On one of the more barbaric occasions, a bully punched John Doe in his genitals so severely that a doctor concluded he "suffered [such] significant trauma to his genitals" that one of his testicles lost "viability[.]" *Id.* Through it all, John Doe told the defendants "repeatedly" (at least seven or eight times) that his classmates were bullying him, and "his mother tried to contact his teachers and school administrators, but the teachers and administrators turned a deaf ear." *Id.* at 1050. When a teacher finally intervened, months later, she made John Doe meet with one of the bullies and encouraged them to "become friends." *Id.* at 1051. After the meeting, the bully told John Doe "that it was 'ok' for friends to hit friends and that he should not tell the teachers because 'friends don't tell on friends.'" *Id.* In the court's view, the teacher "disregarded the danger the bullies posed for John Doe and acted in a way that 'render[ed] [John Doe] . . . more vulnerable' to bullying." *Id.* (citation omitted). It also concluded John Doe stated a claim against the school board because the circumstances of the case, "despite notice of physical harm to the student, suggest[ed] a well-settled custom or practice of utter disregard for student safety." *Id.* at 1051 n.3.

    *Doe* is an outlier. On the one hand, John Doe's allegations were far more developed than CDJ's allegations here. On the other hand, the Eleventh Circuit "has only found conscience-shocking conduct in a school setting sustainable in two cases, both of which involved corporal punishment." *Terry v. Russell Cnty. Bd. of Educ.*, No. 3:14cv953-WKW-TFM, 2015 WL 13736622, at *19 (M.D. Ala. Sept. 28, 2015) (citing *Davis*, 555 F.3d at 982; *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th

12

Cir. 2000)). "Both *Neal* and *Kirkland* involved direct, intentional physical abuse by a state actor that resulted in immediate and severe physical injuries to a student." *Moore*, 936 F. Supp. 2d at 1311. Unlike *Doe*, this and other courts have routinely declined to conclude a school's response to peer-on-peer bullying shocks the conscience under the Fourteenth Amendment. *See e.g.*, *id.*; *Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 61, 63 (2d Cir. 2007) (no substantive due process violation even where defendants knew of some or all of the mistreatment plaintiff endured, "yet condoned, permitted and/or acquiesced in such mistreatment" (internal quotation marks omitted)); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 771 (S.D.N.Y. 2011) (assistant principal's underestimate of severity of harassment of student and imposition of minimal punishment on harassers who later violently attacked plaintiff-student did not shock conscience); *Doe v. Evergreen Park Elementary Sch. Dist. 124*, No. 17-CV-3774, 2017 WL 6731867, at *7–8 (Dec. 29, 2017) (collecting cases) (stating school's response to student bullying "was not the type of egregious or oppressive conduct that shocks the conscience, and it certainly was not 'intended to injure [Plaintiff] in some way unjustifiable by any government interest'"); *Scruggs v. Meriden Bd. of Educ.*, No. 3:03-CV-2224 (PCD), 2007 WL 2318851, at *13 (D. Conn. Aug. 10, 2007) ("In retrospect . . . the record reflects poorly on Defendants' decisions to relatively limit their response to the repeated bullying of [student] by his classmates; nevertheless, Defendants' failure to fully remedy the bullying situation does not amount to 'brutal' or 'oppressive' treatment of [student] at school."); *Yap ex rel. Yap v. Oceanside Union Free Sch. Dist.,* 303 F. Supp. 2d 284, 295–96 (E.D.N.Y. 2004) ("Plaintiffs have proffered no case law wherein the alleged failure of a school to adequately discipline its students met [the] substantive due process threshold. The Court's independent research has similarly failed to reveal any such case law."); *Castaldo v. Stone,* 192 F. Supp. 2d 1124, 1173 (D. Colo. 2001) ("[T]he School Defendants' alleged toleration of

bullying, teasing, and intimidation on the part of the Columbine student body, while reprehensible if true, is not conscience shocking in a Fourteenth Amendment substantive due process sense.").

Some Defendants here (assuming the allegations are true) might consider declaring moral bankruptcy for their inaction. But CDJ's allegations are too sparse and too speculative to render the substantive due process claim plausible. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Count III will be dismissed.[2]

**D. The State Law Claims**

The remaining claims are for recklessness/wantonness, negligence, and the tort of outrage under state law. District courts have discretion to decline to exercise supplemental jurisdiction over a state-law claim when: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to exercise jurisdiction, it should consider the traditional rationales for pendent jurisdiction in deciding whether to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Both comity and economy are served when issues of

---

[2] Because Count III will be dismissed as too speculative to clear the pleading hurdles, the Court need not reach the MCBOE's argument that CDJ has failed to establish municipal liability.

14

state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Because CDJ's federal claims will be dismissed, comity and judicial economy are both served by declining to decide matters of state law needlessly. Pursuant to 28 U.S.C. § 1367(c)(3), Counts I, V, and VI of the SAC will be dismissed without prejudice.

## VI. CONCLUSION

For these reasons, it is **ORDERED** that the Defendants' *Motions to Dismiss* (docs. 71 & 72) are **GRANTED**. The Second Amended Complaint (doc. 60) is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to close the case.

**DONE** on this the 28th day of June 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE